[No. 6540.   Decided June 22, 1907.]

ED. ANDREWS, *Respondent*, v. SAN JUAN FISH COMPANY,
*Appellant.*[1]

SHIPPING—CHARTERS—SEAWORTHINESS—NOTICE—CONSTRUCTION OF
AGREEMENT. Where, during five or six days immediately preceding
the making of a charter agreement for a small steamer for the
period of one year, the officers of the lessee took three or four trips
on the boat while operated by the owner, and no fraud was prac-
ticed and the lessee had full opportunity to know the condition of
the boat, the lessee cannot, after several weeks use, avoid payment
of the rent on the plea that the steamer was unseaworthy when
chartered, the agreement having expressly provided that the lessee
should make all necessary repairs at its own expense and keep the
vessel in first-class condition during the term.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered July 18, 1906, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action on contract.  Affirmed.

*McClure & McClure,* for appellant.

*Langley & Hamlin (Sauter & Sheldon,* of counsel), for re-
spondent.

ROOT, J.—Respondent was the owner of a small steamer
which, upon the 6th day of August, 1904, he chartered to
appellant, the charter agreement containing the following
provisions:

"For the use of said steamer, said San Juan Fish Company
agrees and binds itself to pay to said Ed. Andrews, the sum
of four hundred fifty and no-100 ($450.00) dollars, the pay-
ments to be made as follows: $75.00 on the first day of Aug-
ust, 1904; $75.00 on the 15th day of August, 1904; $75.00
on the 1st day of September, 1904; $75.00 on the 1st day of
October, 1904; $75.00 on the 15th day of October, 1904.   It
is further understood and agreed that said second party shall

[1]Reported in 90 Pac. 643.

31—46 WASH.

be at the expense of manning and furnishing said boat for the above term, at its own expense, any changes or repairs necessary in the proper operation and use of said steamer, and shall keep said steamer staunch, well-fitted, tackled, and in first-class condition, and shall return said vessel, at the end of said above-mentioned term, at Blaine or Seattle, at option of second party, to said first party, in good, first-class condition, and shall also return all equipment which was on said vessel at the time of the making of this charter. It is further understood and agreed that said second party shall have full and absolute management and control of said steamer during the time of this charter party, and may operate her in any manner not contrary to law or to the provisions of her license. If said steamer shall be damaged or destroyed, during said above-mentioned term, from any cause whatsoever, whether by the acts of the second party, or its agents or servants, or by the act of God, said second party agrees to pay first party the sum of one thousand ($1,000.00) dollars, as liquidated damages, in addition to the sum of four hundred fifty and no-100 dollars ($450.00) rent as hereinbefore mentioned. And said second party agrees that no bills of any kind or claims of wages shall incumber said steamer upon her return to said first party."

During the five or six days immediately preceding the date of this agreement, the steamer had made some three or four trips upon the Sound, with several of appellant's officers on board and the engine being operated by respondent. Appellant hired said steamer to be used in carrying fish from the traps to its cannery, and the boat was engaged in this work during the trips made as aforesaid prior to the execution of the agreement mentioned. On the 27th of August, 1904, appellant ceased to use said steamer and, upon the 9th of November, 1904, redelivered the same to respondent, who tied up the boat for nearly a year, when a new engine was installed. Appellant paid only two installments of the charter money, one for $75 on August 1, 1904, and the other for $75 on August 15, 1904. In this action respondent sought to recover the balance of the charter money, $300, and $1,000 liquidated damages, as provided in the charter agreement.

The trial court made findings and conclusions in the case, and entered judgment thereupon for plaintiff in the sum of $300. From the judgment, this appeal is taken.

Appellant claims that the vessel was unseaworthy when chartered, in that her engine was poorly constructed and out of repair and incapable of being operated successfully. Respondent maintains that the engine was being successfully operated at that time, and that the boat went on several trips before the agreement was entered into, and thereby demonstrated its fitness for the service for which it was engaged; that appellant's officers were aboard during these several trips and had full opportunity to know about the engine, and the vessel in every way; that in view of these facts, it must be conceded that the vessel was at that time seaworthy, and that it was the duty of the appellant to keep her in a seaworthy condition thereafter—the contract expressly providing that the appellant should make, at its own expense, any repairs necessary, and should keep the vessel in first-class condition and return her in such condition to respondent at the end of the period for which she was hired. The trial court evidently adopted these views, and we are disposed to deem them correct. It clearly appears that the appellant did not enter into the agreement in question until it had ample opportunity to know of the condition of the vessel. It saw fit to accept the vessel as being suitable for its needs, and there is nothing whatever in the record to show that respondent prevented it from ascertaining the true condition of the vessel, or that he practiced any misrepresentation or deception calculated to conceal the true condition of the vessel or to mislead appellant in ascertaining the same. This being true, we do not think that appellant is in a position to say that the vessel was not what it supposed it to be when it entered into the agreement by the terms of which it was to furnish all repairs and keep the vessel in first-class condition.

The judgment of the superior court is affirmed.

HADLEY, C. J., DUNBAR, CROW, and MOUNT, JJ., concur.